JANVIER, Judge.
This most complex and confusing litigation results from the fact that on September 13, 1957, the plaintiff, Monroe Patterson, through his wife, bought from Western Auto Supply Company an electric refrigerator and a sewing machine. The total price, including sales taxes, was $298.55 of which $15 was paid in cash. This left an unpaid balance of $283.55, and, as this was to be paid in monthly installments of $15 each, there was added a handling charge of $51.40 which, when added to the unpaid balance, made a total amount of $334.95 which was to be paid in installments.
The plaintiff made five monthly payments of $15 though each was not paid promptly when due, and, during the early part of 1958, he was substantially behind in his payments and the vendor, defendant, provoked the issuance of a writ of sequestration and under it caused the seizure by the Civil Sheriff of the appliances in question.
In an effort to adjust the matter counsel for the parties resorted to conferences and correspondence, as a result of which they arrived at what counsel for Patterson says was a compromise agreement, but which counsel for Western Auto Supply Company sáys was merely unsuccessful negotiation. It was tentatively understood that Patterson was to retain the sewing machine, was to pay $15 on account of the court costs expended in the sequestration proceedings, was to pay an additional $15 on past-due installments, and Western Auto Supply Company was to deliver to him a new refrigerator of the same make and model and he was then to resume regular monthly payments.
*612 It is contended by Western Auto Supply Company that a condition of this agreement required that Mrs. Patterson visit the store of defendant within seven days and witness a demonstration of the operation of the new refrigerator which Patterson was to receive. Counsel for Western Auto Supply Company argued that this was a condition on which the entire agreement depended and that it was insisted upon because it was felt that the troubles which Patterson and his wife had had with the first refrigerator resulted from ignorance of Mrs. Patterson as to how to operate the refrigerator.
It is contended by Patterson that the visit of his wife to witness the operation of the new machine was not a condition, hut was only a suggestion and that the compromise agreement was in no way conditioned on that visit to the store of defendant. At any rate she did not call for the demonstration within seven days and when she did call ten days after the expiration of that period, she was shown a refrigerator which was not identical with the original refrigerator, according to defendant, was a better one and a later model, but which Mrs. Patterson says not only was this not identical but was not a new one and had either been used or was a floor demonstrator. She says, too, that she was asked to sign a new contract and to pay a higher price than that for which the first had been bought and that for this reason she refused to sign or to accept the new refrigerator. As a result of these disagreements, Patterson brought this suit against Western Auto Supply Company, praying for the return of the amount which he had paid and also for an additional $20 as damages for “loss of food.” He bases his suit on the charges that the refrigerator had always been defective and that the vendor had been called upon on numerous occasions to make repairs, and that finally it had proven so defective that he had bought a new refrigerator.
In answer to the suit by Patterson, Western Auto Supply Company denied all of the charges that the refrigerator as originally sold was defective and averred that, after the filing of the sequestration proceedings, there had been the negotiations already referred to looking to a compromise, but that certain conditions upon which the proposed compromise was based had not been carried out and therefore, in fact, there had been no compromise, but that the defendant, believing that a compromise was to be effected, had sold the original refrigerator — at private sale and without appraisement — and had received $119.95 for it.
Defendant prayed for a dismissal of the suit of plaintiff, and assuming the position of plaintiff in reconvention, prayed for judgment against Patterson in the sum of $244.95 as the unpaid balance due on the original refrigerator, and, in the alternative that it be held not entitled to that balance, that it be awarded judgment for $105, representing the fair rental value of the refrigerator during the time it was used by Patterson and plaintiff in reconvention also prayed that it be awarded 25% as attorney’s fees ás a result of the contract under which the appliances had been originally sold.
There was judgment dismissing the suit of Patterson and in favor of Western Auto Supply Company as plaintiff in reconvention in the sum of $59.95, with interest from judicial demand and for attorney’s fees at 25% of the amount awarded. We think that apparently this figure, $59.95, was arrived at as a result of what seems to have been an incorrect statement of account found in the sequestration proceedings since defendant and plaintiff in reconvention, which was plaintiff in that proceeding, now contends that, through error, the amount then due was $259.95 and that, through bookkeeping error it gave to plaintiff credit for $200 representing a remit-titur.
When we come to consider the question of whether the refrigerator was defective, we find that it was sold on September 13, 1957, and that ten days later, on September *613 23, 1957, — incorrectly shown as September 23, 1958 — a salesman was called to repair what Mrs. Patterson claimed was a defect in the refrigerator in that it was not freezing. The report of the service man showed the following: “Box unplugged from circuit.” On November 5th a service man was again called to examine the refrigerator because Mrs. Patterson claimed that it was “sweating”. The service man found that there was a crack in an inner panel and reported that there had been no such crack on the visit in September. There were four other service calls and each of them showed that what was complained of resulted from improper operation by Patterson or Mrs. Patterson.
 A careful examination of this record and particularly of the service reports convinces us that there was nothing defective about the refrigerator and that, therefore, plaintiff was not within his rights in refusing to make further payments. His refusal to make further payments obviously gave Western Auto Supply Company the right to file suit for the accelerated balance due and to sequester the appliances, and had Western Auto Supply Company continued with the sequestration proceedings and sold the appliances in those proceedings, there is no doubt that it would have been entitled to the unpaid balance, costs, etc. But when it relied on the hope that a compromise was to be effected and consummated and that by that compromise the old refrigerator was turned back to it, it sold the refrigerator at private sale. The result of this was that it lost the right to obtain a deficiency judgment for the unpaid balance. This is well settled. See Atlas Finance Corp. v. Whitehead, La.App., 99 So.2d 481 and Emmco Insurance Co. v. Nola Cabs, Inc., La.App., 125 So.2d 207.
Our conclusion is that the parties must be left in the positions in which they found themselves before this suit was filed, and that accordingly the judgment appealed from is incorrect in that by it plaintiff was awarded a balance of $59.95.
The judgment appealed from is annulled, avoided and reversed and plaintiff’s suit is dismissed at his cost, and the reconventional demand is dismissed at the cost of defendant and reconvenor.
Reversed.